IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 10-4083-2-MWB |
| | ) | |
| Plaintiff, | ) | AMICUS CURIAE BRIEF OF IOWA |
| | ) | FEDERAL DEFENDER'S OFFICE, |
| vs. | ) | ADDRESSING WHETHER THE COURT |
| | ) | SHOULD EMPLOY A 1:1 CRACK-TO- |
| BILLY WILLIAMS, SR., | ) | POWDER COCAINE RATIO IN THIS AND |
| | ) | FUTURE CRACK COCAINE CASES |
| Defendant. | ) | |

Pursuant to this court's order of February 2, 2011, the Iowa Federal Defender's Office respectfully submits the following amicus curiae brief addressing whether this court, as a matter of general sentencing policy, should continue to employ a 1:1 crack-to-powder ratio in crack cocaine cases. The Federal Defender respectfully urges the court to maintain its just and equitable policy of using a 1:1 ratio.

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     AUTHORITY TO RETAIN THE USE OF A 1:1 CRACK-TO-POWDER RATIO . . . . 4

III.    *GULLY* AND ITS IMPACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      This court's reasons for the initial adoption of a 1:1 ratio . . . . . . . . . . . . . . . . . . . 5

        B.      Continuing validity of the reasons for employing a 1:1 ratio . . . . . . . . . . . . . . . . 6

        C.      *Gully's* influence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     COMPROMISE AND THE 18:1 RATIO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**I.     INTRODUCTION**

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), and then more pointedly in *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 843-844, 172 L.Ed.2d 596 (2009) (*per curiam*), the United States Supreme Court made it clear that federal sentencing courts were free to reject the U.S. Sentencing Guidelines' use of the then 100:1 crack-to-powder ratio in determining an appropriate sentence for a crack cocaine offense. This natural fallout from the Court's earlier decision to render the Guidelines merely advisory, see *United States v. Booker*, 543 U.S. 220, 245, 125 S.Ct. 738, 756-757, 160 L.Ed.2d 621 (2005), freed courts to reject a particular guideline "on categorical, policy grounds, even in a 'mine-run' case...." *United States v. Gully*, 619 F.Supp.2d 633, 637 (N.D. Ia. 2009).

In response this court adopted a 1:1 ratio for use in its crack cocaine sentencings, with appropriate variances to account for case-specific factors. *Gully*, 619 F.Supp.2d at 644. Several district courts around the country followed this court's lead in the *Gully* case and adopted the 1:1 ratio. See, e.g., *United States v. Whigham*, ____ F.Supp.2d _____, 2010 WL 4959882 (D. Mass. Dec. 3, 2010) ("I adopt the reasoning of Judge Bennett in *United States v. Gully*...."); *Henderson v. United States*, 660 F.Supp.2d 751 (E.D. La. 2009) (finding the "well-reasoned" *Gully* opinion "very persuasive" and adopting its methodology); *United States v. Medina*, No. 08CR256-L, 2009 WL 2948325 (S.D. Cal., Sept. 11, 2009) ("The Court finds *Gully* persuasive and adopts its reasoning."); *United States v. Lewis*, 623 F.Supp.2d 42, 46 (D. D.C. 2009) ("This Court agrees with Judge Bennett wholeheartedly."); see also *United States v. Brewer*, 624 F.3d 900 (8th Cir. 2010) (Bright, J., concurring in part and dissenting in part) (finding that "fairness favors Judge Bennett's 1:1 ratio over the ratios currently recommended by the guidelines.").

Last summer Congress finally took action against the long and widely criticized 100:1 ratio. With the passage of The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010), Congress altered the quantity thresholds for triggering mandatory minimum punishments for crack cocaine offenses. In doing so Congress took the old 5- and 50-gram thresholds for triggering mandatory minimum punishment for crack offenses and replaced them with 28- and 280-gram thresholds, respectively.

The crack-to-powder ratio dispute stems, of course, from the fact that it takes much greater quantities of cocaine powder to trigger the same mandatory minimum penalties that apply to crack cocaine offenses. Under the old scheme it took 500 grams and 5 kilograms of powder cocaine to trigger the same mandatory minimum penalties applicable to 5 and 50 grams of crack cocaine, respectively. Compare 21 U.S.C. § 841(b)(1)(A)(ii)(I-IV) (2009) with 21 U.S.C. § 841(b)(1)(A)(iii) (2009) and 21 U.S.C. § 841(b)(1)(B)(ii)(I-IV) (2009) with 21 U.S.C. § 841(b)(1)(B)(iii) (2009). The old 5- and 50-gram crack thresholds accordingly made for a 100:1 ratio vis-a-vis powder cocaine. The powder cocaine thresholds have not changed and remain at 500 grams and 5 kilograms for triggering mandatory minimum punishments. With the adoption of the new 28- and 280-gram thresholds for triggering the same mandatory minimums in crack cocaine offenses, Congress has now displaced the old 100:1 ratio with roughly an 18:1 ratio (18 x 28 grams = 504 grams; 18 x 280 grams = 5,040 grams or 5.04 kilograms).

At Congress's direction the U.S. Sentencing Commission has followed suit and adopted a similar disparate punishment scheme for crack and powder cocaine offenses, employing roughly the same 18:1 ratio. Although this court is bound to apply the statutory mandatory minimums that employ the 18:1 ratio, see *United States v. Freemont*, 513 F.3d 884, 890-891 (8th Cir. 2008), a fair question arises as to whether this court should hue to its leading decision to employ a 1:1

ratio in calculating an advisory range sentence for crack offenses under the Guidelines, or accede to the Sentencing Commission's adoption of the 18:1 ratio employed by Congress in setting mandatory minimums in The Fair Sentencing Act.

On February 2, 2011, this court formally requested that the Iowa Federal Defender's Office file an amicus curiae brief addressing this important question. The Federal Defender now respectfully submits its amicus brief, urging this court to continue its just path of employing a 1:1 ratio in crack cocaine cases, with appropriate enhancements and variances to address case-specific circumstances.

## II.     AUTHORITY TO RETAIN THE USE OF A 1:1 CRACK-TO-POWDER RATIO

As a preliminary matter, there should be no doubt or dispute as to this court's authority to retain the use of a 1:1 ratio in crack cocaine cases despite recent developments and the Guidelines' adoption of an 18:1 ratio. The issue here is not one of power or authority, but of discretion.

The Supreme Court has made it clear that a district court can reject a particular sentencing guideline on policy grounds, even in an ordinary or "mine run" case, *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 843-844, 172 L.Ed.2d 596 (2009) (*per curiam*), and in its influential decision in *United States v. Gully*, 619 F.Supp.2d 633 (N.D. Ia. 2009), this court acknowledged its broad authority to reject the previous 100:1 crack-to-powder ratio on policy grounds and to employ a more rational 1:1 ratio in its stead. *Gully*, 619 F.Supp.2d at 637-644.

The adoption of an 18:1 crack-to-powder ratio in the newly amended crack cocaine sentencing guidelines did not, indeed could not, alter the Supreme Court holding that the advisory sentencing guidelines can be categorically rejected by a sentencing court purely on

policy grounds. The crack-to-powder ratio employed by the Guidelines has changed from 100:1 to 18:1, but the authority of a sentencing court to reject even that ratio has not changed. When the Supreme Court rendered the Guidelines advisory in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), it didn't make them advisory *except ...;* it rendered them advisory period. Accordingly, this court retains the authority to reject the new 18:1 ratio and continue to use the 1:1 ratio. The issue is simply whether this court should elect to exercise that authority.

### III. *GULLY* AND ITS IMPACT

    A.    <u>Reasons for the initial adoption of a 1:1 ratio</u>.

In *Gully*, this court took a strong stance against the 100:1 ratio and in favor of a 1:1 ratio. 619 F.Supp.2d at 637-644. The court gave numerous reasons for adopting the 1:1 ratio, noting in particular:

> –   that the higher ratio was not the product of institutional study by the Sentencing Commission, but merely a response to congressional mandates;
>
> –   that old assumptions about the relative harmfulness of crack vis-a-vis powder cocaine were not borne out by recent data;
>
> –   that the higher ratio had the unintended and perverse effect of punishing low-level street traffickers more severely than major powder traffickers;
>
> –   that the higher ratio scheme had a greatly disproportionate and severe impact on African-American defendants; and
>
> –   that the higher ratio was an inefficient and unfair proxy for the imagined increased harms from crack cocaine offenses.

*Gully*, 619 F.Supp.2d at 640-641. Each of these reasons and concerns remain as valid today with the 18:1 ratio as they did with the 100:1 ratio.

    B.    <u>The continuing validity of the reasons for employing a 1:1 ratio</u>.

        *(i)*    *The new ratio is not a product of institutional study or expertise.*

As it was with the 100:1 ratio, the new 18:1 ratio employed by the Guidelines was not the product of the Sentencing Commission exercising its institutional role of developing guidelines based on actual sentencing practices, but rather was merely a response to congressional directives. <u>See</u> USSG App. C, Amend. 748, Reason for Amendment (Supplement to the 2010 Guidelines Manual, United States Sentencing Commission, Nov. 1, 2010, pp. 42-43). In The Fair Sentencing Act Congress effectively established the new 18:1 ratio by replacing the 5- and 50-gram thresholds for triggering mandatory minimum penalties with new 28- and 280-gram thresholds, respectively. <u>See</u> 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii). The crack guidelines have been amended simply to reflect this policy choice by Congress. <u>See</u> Supplement to the 2010 Guidelines Manual, United States Sentencing Commission, Nov. 1, 2010, p. 43) (noting that the across-the-board reductions in the crack cocaine offense levels "ensures that the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table."); <u>see also</u> The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010), at Sec. 8 (directing the Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.").

        *(ii)*    *Assumptions about the harmfulness of crack cocaine versus powder cocaine continue to infect the ratio.*

The previous finding by this court that assumptions about the relative harmfulness of crack and powder cocaine "are not supported by recent research and data[,]" *Gully*, 619 F.Supp.2d at 641, has not been undermined by any new finding by either Congress or the Sentencing Commission. Indeed, Congress issued no new findings in making its ameliorative changes in crack cocaine punishment. See The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010). Moreover, the Sentencing Commission has not backed away from its previous finding that the old ratio approach "overstate[s] the relative harmfulness of crack cocaine compared to powder cocaine [and] overstate[s] the seriousness of most crack cocaine offenses...." United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy, p. 8 (May 2007). Although this previous "overstates the harm" finding was made with respect to the 100:1 ratio, the new Guidelines were not accompanied by a specific finding that 18:1 now perfectly or fairly captures the balance of harms.

In any event, such relativity judgments are imperfect devices for imposing individualized sentences. This court called the 100:1 ratio a "remarkably blunt instrument" for addressing specific harms that are thought to occur more frequently in crack cocaine offenses than powder cocaine offenses. *Gully*, 619 F.Supp.2d at 641. The ratio instrument, even at a lowered level, remains an imperfect tool for determining an individualized sentence for cocaine offenses.

> (iii) *The pernicious effect of punishing street-level dealers more harshly than major traffickers in powder cocaine continues under the new ratio.*

"Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers." *Gully*, 619 F.Supp.2d at 639. The lower ratio has lessened but not eliminated the disparity in the advisory ranges for street-level crack dealers and large scale powder traffickers.

The 18:1 ratio still produces a significant disparity in punishment that benefits the larger powder supplier vis-a-vis the lower street-level retailer. The 18:1 ratio is obviously better in this regard than the previous 100:1 ratio, but the new ratio still produces the "'anomalous result'" that "'retail crack dealers get longer sentences than the wholesale drug distributors who supply them....'" *Gully*, 619 F.Supp.2d at 639 (quoting United States Sentencing Commission Report to Congress: Cocaine and Federal Sentencing Policy, pp. 66-67 (Feb. 1995)).

(iv) *The disproportionate impact on African-American defendants will continue even at a lowered ratio.*

Regrettably, the reduced ratio does nothing to reduce the disproportionate impact that crack sentencing policy has on African-American defendants. African Americans continue to represent the vast majority of crack cocaine defendants. United States Sentencing Commission, Overview of Federal Criminal Cases Fiscal Year 2009, p. 7 ("In crack cocaine cases, 79.0 percent of those convicted were Black."). Thus, the 18:1 ratio will continue to mean that black defendants will bear the brunt of higher punishment for crack offenses over powder offenses. The perception of racial bias in this scheme will persist as long as the unequal treatment of crack and powder offenses persists.

(v) *The 18:1 ratio continues to be a misguided proxy for the assumed increased harms of crack cocaine offenses.*

In electing to employ a 1:1 ratio for crack cocaine sentencing, this court criticized the use of the higher quantity ratio as a "proxy" for the imagined or assumed dangers of crack cocaine offenses. *Gully*, 619 F.Supp.2d at 641. This court urged that higher punishment for those dangers should be reserved for "*when they are present in a particular case.*" *Id.* (emphasis original). Accordingly, the sound policy choice of this court was to "use a 1:1 crack-to-powder

ratio ... in all crack cases, then to enhance sentences for individual defendants for trafficking offenses that actually involve weapons or bodily injury, or for other conduct warranting enhancement under 18 U.S.C. § 3553(a)...." *Gully*, 619 F.Supp.2d at 644; see also *United States v. Golden*, 679 F.Supp.2d 980, 987-991 (N.D. Ia. 2010) (employing the *Gully* methodology to enhance a crack defendant's sentence based on case-specific factors).

In enacting the Fair Sentencing Act Congress agreed with this court's prescient point that sentences for crack (and other drug) offenses should be enhanced when the dangers of drug trafficking are realized in a particular case, as Congress specifically directed the Sentencing Commission to adopt enhancements for certain aggravating circumstances in drug trafficking cases. The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010), at sec. 5 and 6. However, instead of starting on level ground for all cocaine offenses and then adding punishment for the presence of aggravating factors, as this court urged and adopted, the Sentencing Commission left a higher base punishment in place for crack offenses and then added punishment for the presence of aggravators. Thus the present scheme has enhanced punishment for assumed or imagined dangers of crack offenses, plus enhancements for when those dangers actually occur.

This double whammy for assumed harms and realized harms not only fails to remedy the "proxy" approach that so concerned this court in the first instance, but exacerbates it.

In sum, the factors that led this court to adopt a 1:1 crack-to-powder ratio to achieve more just and rational crack cocaine sentencing still exist today despite the generally positive and ameliorative steps taken by Congress and the Sentencing Commission to reduce the impact of disparate punishment for crack and powder cocaine defendants.

C. *Gully's* Influence.

*Gully's* bold initiative to address the crack-powder disparity head-on did not go unnoticed. A handful of courts have publicly praised and adopted its thoughtful approach to the problem, see *United States v. Whigham*, ____ F.Supp.2d _____, 2010 WL 4959882 (D. Mass. 2010); *Henderson v. United States*, 660 F.Supp.2d 751 (E.D. La. 2009); *United States v. Medina*, No. 08CR256-L, 2009 WL 2948325 (S.D. Cal., Sept. 11, 2009); and *United States v. Lewis*, 623 F.Supp.2d 42, 46 (D. D.C. 2009), and innumerable other courts have undoubtedly been influenced by it in unreported cases.[1]

This is not a small thing, and thus the burden of undoing what is widely regarded as a just, rational and equitable approach to a festering problem should fall heavily upon those who would return to unequal sentencing for crack and powder defendants. Even if the government were to show that the concerns prompting this court's move to a 1:1 ratio have been mollified to some extent, this would hardly be grounds for abandoning this court's sound, fair and widely praised approach.

## IV. COMPROMISE AND THE 18:1 RATIO

Even given a continuation of the concerns that prompted this court to adopt a 1:1 ratio, a strong case could be made for embracing the new 18:1 ratio were it derived by Congress through empirical study and research, and specific findings attached to that study and research. The 18:1 ratio, however, was admittedly nothing more than a political compromise between those who

---

[1] For example, in a recent case in the Southern District of Iowa, Chief Judge Robert Pratt employed a 1:1 ratio, crediting this court: "The court is going to adopt *Gully* as the one to one.... I think Judge Bennett has accurately come up with the methodology that ... reflects the appropriate Guideline...." (*United States v. English*, No. 3:10-cr-00053, Sentencing Tr. p. 18).

favored the complete elimination of all crack-powder disparity, and those who believed that crack offenses should be punished more severely than powder offenses.

First, before The Fair Sentencing Act even came to pass, the Department of Justice urged that the crack/powder disparity be completely eliminated:

* * *

> The supporters of the current cocaine penalty structure believe that the disparity is justified because it accounts for the greater degree of violence and weapon possession or use associated with some crack offenses, and because crack can be potentially more addictive than powder, depending on the usual method of use.
>
> This Administration shares these concerns about violence and guns used to commit drug offenses and other crimes associated with such offenses. We recognize that data suggests that weapons involvement and violence in the commission of cocaine-related offenses are generally higher in crack versus powder cases: a 2007 Sentencing Commission report found that weapons involvement for cocaine offenses was 27 percent for powder cocaine and 42.7 percent for crack. The same sample found that some form of violence occurred in 6.3 percent of powder cocaine crimes and in 10.4 percent of crack cocaine crimes.
>
> Violence associated with any offense is a serious crime and must be punished; we think that the best way to address drug-related violence is to ensure the most severe sentences are meted out to those who commit violent offenses. However, increased penalties for this conduct should generally be imposed on a case-by-case basis, not on a class of offenders the majority of whom do not use any violence or possess a weapon.

* * *

> [W]e cannot ignore the mounting evidence that the current cocaine sentencing disparity is difficult to justify based on the facts and science, including evidence that crack is not an inherently more addictive substance than powder cocaine. We know of no other controlled substance where the penalty structure differs so dramatically because of the drug's form.

> Moreover, the Sentencing Commission has documented that the quantity-based cocaine sentencing scheme often punishes low-level crack offenders far more harshly than similarly situated powder cocaine offenders. Additionally, Sentencing Commission data confirms that in 2006, 82 percent of individuals convicted of federal crack cocaine offenses were African American, while just 9 percent were White. In the same year, federal powder cocaine offenders were 14 percent White, 27 percent African American, and 58 percent Hispanic. The impact of these laws has fueled the belief across the country that federal cocaine laws are unjust.
>
> * * *
>
> In addition, the overwhelming majority of states do not distinguish between powder cocaine and crack cocaine offenses.
>
> For the reasons outlined above, this Administration believes that the current federal cocaine sentencing structure fails to appropriately reflect the differences and similarities between crack and powder cocaine, the offenses involving each form of the drug, and the goal of sentencing serious and major traffickers to significant prison sentences. We believe the structure is especially problematic because a growing number of citizens view it as fundamentally unfair. **The Administration believes Congress's goal should be to completely eliminate the sentencing disparity between crack cocaine and powder cocaine.**
>
> * * *

Statement of Lanny A. Breuer, Assistant Attorney General, U.S. Department of Justice, Before

The United States Senate Committee on the Judiciary-Subcommittee on Crime and Drugs,

April 29, 2009, at pp. 7-10, available at:

http://www.justice.gov/ola/testimony/111-1/2009-04-29-crm-breuer-crack-powder.pdf .

(emphasis added).

In response, the Judiciary Committee of the U.S. House of Representatives voted to

approve Representative Bobby Scott's bill, H.R. 3245 ("The Fairness in Cocaine Sentencing

Case 5:10-cr-04083-MWB   Document 262   Filed 02/25/11   Page 12 of 17

Act"), that completely eliminated the crack/powder disparity. "Bill on cocaine vs. crack sentencing passes House panel." The Virginian-Pilot, July 30, 2009, available at: http://hamptonroads.com/2009/07/bill-cocaine-sentencing-passes-house-panel. The United States Senate also proceeded initially with a bill that accorded equal treatment for crack and powder cocaine offenses. "The Fair Sentencing Act of 2009." *Congressional Record* 155:149 (October 15, 2009), pp. S10490-S10492, available at: http://frwebgate.access.gpo.gov/cgi-bin/getpage.cgi?dbname=2009_record&page=S10443&position=all

    The U.S. Senate, however, could not garner sufficient votes for eliminating the disparity in its entirety, and instead reached a bipartisan compromise that embraced the current legislation and its 18:1 ratio. "Fair Sentencing Act of 2009." *Congressional Record* 156:39 (March 17, 2010) pp. S1680-1683, available at: http://frwebgate.access.gpo.gov/cgi-bin/getpage.cgi?dbname=2010_record&page=S1633&position=all. Senator Durbin of Illinois, who sponsored the initial Senate bill to completely eliminate the crack/powder disparity, supported the compromise legislation and made it clear that the new bill, with its 18:1 ratio, was simply a good faith effort on both sides to get something positive done to ameliorate the unjust 100:1 ratio:

> I especially wish to thank my friend from Alabama, the Judiciary Committee ranking member, *Jeff Sessions*. If asked if there are two politicians on the floor of the Senate who are dramatically different, you couldn't find two any more different than *Dick Durbin* and *Jeff Sessions*. We seldom agree on things, but we came together on this, and <u>we made mutual concessions to come up with a good bipartisan bill</u>. *Jeff*, I think, went the extra mile to find some agreement here. He held to his principles, but we worked it out.

> In the process of reaching that agreement, I wish to also thank some Republican Members who were invaluable. *Lindsey Graham* was one of the first to come up to me and say, I want to work with you on this. There has to be a way we can work this out to the satisfaction of law enforcement and to reach the standards of justice. I thank Senator *Lindsey Graham*, the Republican from South Carolina, for all the work he put into it.
>
> *Tom Coburn* of Oklahoma is another Senator I disagree with so many times politically. He went the extra mile on this. I know it meant a lot to him and he was very helpful.
>
> Finally, *Orrin Hatch* from Utah. Senator *Hatch* from the beginning said, Don't quit, stick with it, we can reach an agreement. He was an inspiration to us as we brought this to a conclusion.
>
> We have talked about the need to address the crack-powder disparity for too long. Every day that passes without taking action to solve this problem is another day that people are being sentenced under a law that virtually everyone agrees is unjust. <u>I wish this bill went further. My initial bill established a 1-to-1 ratio, but this is a good bipartisan compromise</u>. If this bill is enacted into law, it will immediately ensure that every year, thousands of people are treated more fairly in our criminal justice system. I hope my colleagues, when they hear about our efforts on this, will join in supporting our efforts to deal with this disparity.

*Id.* at p. S 1681 (emphasis added); see also Letter of the U.S. Senate Committee on the Judiciary, to Colleagues, July 20, 2010, available at:

http://www.famm.org/Repository/Files/Fair%20Sentencing%20Act%20House%20Dear%20Colleague%5B1%5D.pdf. ("The Fair Sentencing Act would establish an 18:1 crack-powder ratio, which reflects a bipartisan compromise that was reached in the Senate Judiciary Committee. This 18:1 ratio responds to concerns raised by many in law enforcement, who agree that the 100:1 disparity is unjustified, but argue that crack is associated with greater levels of violence and therefore should be subject to tougher penalties.")

The Senate compromise bill (S 1789) went before the House of Representatives on July 28, 2010, where it was entitled "The Fair Sentencing Act of 2010." The measure was adopted on voice vote with limited debate. "The Fair Sentencing Act of 2010." *Congressional Record* 156:112 (July 28, 2010) pp. H6196-H6204, available at:

http://frwebgate.access.gpo.gov/cgi-bin/getpage.cgi?dbname=2010_record&page=H6165&position=all. Again, it was clear that adoption of the Senate bill was in the spirit of compromise and not out of broad conviction that the 18:1 ratio was wholly warranted:

> "The legislation does not fully eliminate the 100-to-1 disparity...but it does make good progress...." Statement of Representative Scott of Virginia, *id*., at p. H6197.

●

> "Although I am disappointed that this measure does not entirely eliminate the disparity, I want to commend Senators *Durbin, Sessions,* and *Coburn* for crafting a very significant compromise." Statement of Representative Clyburn of South Carolina, *id*., at p. H6198.

●

> "It is time for us to realize that the only real difference between these two substances is that a disproportionate number of the races flock to one or the other.... The unwarranted sentencing disparity not only overstates the relative harmfulness of the two forms of the drug..., but it also disproportionately affects the African-American community." Statement of Representative Lee of Texas, *id*., at p. H6199.

●

> "I think this is tough but fair. I would not support going further.... This is a well-crafted bill. It is a good compromise." Statement of Representative Lungren of California, *id*., at p. H6202.

●

> "It's called the Fair Sentencing Act. I'd like to rename it, though.
> I'd like to call it the slightly Fairer Resentencing Act....I would
> have much preferred H.R. 3245." <u>Statement of Representative
> Paul of Texas</u>, *id.*, at p. H6203.

President Obama signed S 1789 into law on August 3, 2010. Adoption of the law has been rightly praised for what it is – "progress," and a "step" in the right direction. <u>See</u>, <u>e.g</u>., Press Release from the Office of Representative Bobby Scott of Virginia, 7-28-10 available at: http://www.bobbyscott.house.gov/index.php?option=com_content&task=view&id=517&Itemid=62. ("Although I think the fairest approach would be to totally eliminate the disparity between crack and powder cocaine, the bill we passed today represents substantial progress toward that goal."); Press Release from the Office of Senator Cardin of Maryland, July 28, 2010, available at: http://cardin.senate.gov/news/record.cfm?id=326785&& ("Despite my ongoing commitment to completely eliminate this disparity, Congress has taken a long overdue step toward equality.").

## V. CONCLUSION

The crack/powder disparity remains unfair. Unfair as a proxy for assumed or imagined harms or dangers. Unfair in commending lesser sentences for wholesale suppliers over street-level dealers. Unfair in its disparate racial impact. Unfair in the toxic perception of racial bias it creates.

The Department of Justice commendably pushed to eliminate all disparity between crack and powder cocaine punishments, and the initial impulse of Congress was to do the same. Congress ultimately lacked the votes to adopt the 1:1 ratio favored by the Department of Justice and many others, but its move to an 18:1 ratio as a compromise measure should not be viewed by this court as a final, binding judgment or sentiment that all is now right and fair with crack cocaine sentencing. This court's well-received and thoughtful judgment in *Gully* has not been undermined, and thus amicus counsel respectfully urges this court to maintain the use of a 1:1 crack-to-powder ratio in this and future crack cocaine cases.

    /s/ Nicholas Drees
NICHOLAS DREES

    /s/ John Messina
JOHN MESSINA

FEDERAL DEFENDER'S OFFICE
400 Locust Street
Suite 340, Capital Square
Des Moines, Iowa 50309-2353
TELEPHONE: (515) 309-9610
TELEFAX: (515) 309-9625
E-MAIL: nick_drees@fd.org
E-MAIL: john_messina@fd.org

AMICUS COUNSEL

CERTIFICATE OF SERVICE
I hereby certify that on February 25, 2011, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
    /s/